[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an environmental action in six counts brought by the plaintiff Timothy R.E. Kenney, Commissioner of Environmental Protection against Gianfranco Galluzzo seeking injunctive relief and an order for payment of civil penalty to the State of Connecticut and an order for payment of environmental remedial costs to the State of Connecticut. This matter proceeded as a hearing in damages.
 I.
The following facts found by this court are undisputed.[1] This action was commenced by writ, summons and complaint on November 18, 1994. Defendant Gianfranco Galluzzo appeared through counsel on September 18, 1995 and filed an Answer with Special Defense on October 18, 1995. Plaintiff filed a Request to Revise Special Defense on November 1, 1995. Defendant did not file an objection to Plaintiff's Request to Revise Special Defense.
Plaintiff filed a Motion for Default for Failure to Plead on January 2, 1996 citing defendant's failure to replead in accordance with the Request to Revise Special Defense. That Motion was granted by the court (Schimelman, J.) on January 16, 1996. Defendant filed a pleading on January 11, 1996 captioned "Revised Special Defense." Defendant did not at any time, CT Page 5535 including at the time of the Hearing in Damages, seek to have the Default set aside by the Court.
Defendant Gianfranco Galluzzo was, from September 23, 1986 until November 4, 1994, the record owner of property known as 51 Albany Turnpike, Canton, Connecticut ("the site"), which is approximately 1.7 acres in area. The site was formerly owned by the John Swift Chemical Company, Inc. which, for a period of approximately twenty years, was engaged at the site in the business of cleaning and distilling spent industrial solvents acquired from other persons or corporation. The site was contaminated in 1969 or 1970 by the dumping of spent industrial solvents during the ownership of John Swift Chemical Company, Inc.
The site is contaminated with solvent-type chemicals such as tetrachloroethylene and xylene and associated byproducts. The contaminants tetrachloroethylene ("PCE") and trichloroethylene ("TCE"), which are listed as probable human carcinogens by the Environmental Protection Agency ("EPA"), are listed as hazardous wastes by EPA pursuant to 40 Code of Federal Regulations ("C.F.R.") § 261, adopted pursuant to the federal Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901, et seq.
On November 28, 1978 the Department of Environmental Protection ("DEP") issued a pollution abatement order to the former owner of the site, Auto World Realty, Ltd., later known as Auto World Enterprises, Ltd., and that order was recorded on the land records in the Town of Canton.
In connection with the September 1986 conveyance of the site to the defendant Gianfranco Galluzzo, Auto World Enterprises, Ltd. did not provide a negative declaration to the Commissioner that there had been no discharge, spillage, uncontrolled loss, seepage or filtration of hazardous wastes on-site or that any such discharge, spillage, uncontrolled loss, seepage or filtration had been cleaned up in accordance with procedures approved by the Commissioner or determined by the Commissioner not to pose a threat to health or the environment that would warrant remedial action, and that any hazardous waste remaining on-site is being managed in accordance with Connecticut's hazardous waste and water pollution control statutes and regulations.
In connection with the September 1986 conveyance of the CT Page 5536 site, neither Auto World Enterprises, Ltd. nor the defendant Gianfranco Galluzzo certified to the Commissioner that the effects of any discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste on-site would be contained, removed or otherwise mitigated, in accordance with the Commissioner's approval.
In connection with the September 1986 conveyance of the site, the defendant Gianfranco Galluzzo signed an Indemnification Agreement with Auto World Enterprises, Ltd. which agreement provided, among other things, that Auto World Enterprises would indemnify the defendant for "all liabilities, claims, losses, costs, damages and expenses (including, but not limited to attorneys' fees incurred by Galluzzo to defend any action brought by the Connecticut Department of Environmental Protection)" in connection with action initiated by the DEP with regard to the site.
In connection with the November 4, 1994 conveyance of the property from the defendant Gianfranco Galluzzo to Cadle Properties of Connecticut, Inc., neither the defendant nor Cadle Properties provided a negative declaration to the Commissioner that there had been no discharge, spillage, uncontrolled loss, seepage or filtration of hazardous wastes on-site or that any such discharge, spillage, uncontrolled loss, seepage or filtration had been cleaned up in accordance with procedures approved by the Commissioner or determined by the Commissioner not to pose a threat to health or the environment that would warrant remedial action, and that any hazardous waste remaining on-site is being managed in accordance with Connecticut's hazardous waste and water pollution control statutes and regulations. In connection with the November 4, 1994 conveyance of the site, neither the defendant Gianfranco Galluzzo nor Cadle Properties of Connecticut, Inc. certified to the Commissioner that the effects of any discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste on-site would be contained, removed or otherwise mitigated, in accordance with the Commissioner's approval.
In January 1987 the site was placed on the State of Connecticut Inventory of Hazardous Waste Sites in accordance with Conn. Gen. Stat. § 22a-8a.
On January 26, 1989 DEP issued pollution abatement order HM-568 to the defendant Gianfranco Galluzzo which was recorded on CT Page 5537 the land records of the Town of Canton. The defendant did not at any time comply with any of the requirements of pollution abatement order HM-568.
On May 2, 1989, pursuant to Conn. Gen. Stat. § 22a-133e and § 22a-133f, the Commissioner determined that the threat to the environment and public health from the site was unacceptable and authorized remedial action, pursuant to the state superfund program, to be undertaken at the site. DEP contracted with Metcalf Eddy in 1989 to do a Remedial Investigation and the land records of the Town of Canton. The defendant did not at any time comply with any of the requirements of pollution abatement order HM-568.
On May 2, 1989, pursuant to Conn. Gen. Stat. § 22a-133e and § 22a-133f, the Commissioner determined that the threat to the environment and public health from the site was unacceptable and authorized remedial action, pursuant to the state superfund program, to be undertaken at the site. DEP contracted with Metcalf Eddy in 1989 to do a Remedial Investigation and Feasibility Study ("RI/FS") of the site to be paid for with public funds.
The RI/FS, the first phase of remedial action as set forth in Regulations of Conn. State Agencies ("RCSA") §22a-133f-1(c)(1)(A) includes information gathering, on-site and off-site field investigations and tests, data analysis, remedial investigation report, source control remediation feasibility study and off-site remediation feasibility study. The defendant Gianfranco Galluzzo denied DEP and its contractor access to the site and DEP obtained an administrative search warrant from Superior Court to conduct its investigation, including soil borings, soil sampling and hydrogeologic evaluation which included the installation of numerous monitoring wells. A second search warrant was obtained to gain access to the site for additional on-site investigations to be conducted by DEP and its contractor.
Metcalf Eddy conducted an RI/FS on the site and in the area of the site from may 1990 until December 1993. DEP incurred costs of $511,831.06 for the RI/FS which was completed in December 1993. DEP incurred administrative costs for the RI/FS, only a portion of which can be documented. That portion totals $6,455.50. CT Page 5538
Analyses and tests performed in connection with the RI/FS on-site and in the surrounding area indicate that the soil and groundwater on the site remain severely contaminated with industrial solvents and that a plume of contaminated groundwater has migrated off the site. Several drinking water wells at private residences in the area of the site were discovered to be contaminated with industrial solvents prior to the start of the RI/FS and were connected to a public water supply.
The Remedial Investigation Report concluded that the primary waste constituents found in high levels in the soil on-site are tetrachloroethylene ("PCE"), trichloroethylene ("TCE") and xylene; DEP concurs with those conclusions. DEP concurred with the contractor's conclusion that soil contamination on the site extends from within a few inches of the surface to the bedrock.
The costs of five alternative plans evaluated for remediation of contaminated soil overlying bedrock at the site range from zero to $40 million. DEP concurred with the contractor's recommendation that soil vapor extraction with capping, at a cost of approximately $4.5 million in 1994 dollars, is the best technology to clean up contamination on the site in the unconsolidated materials or soil above the water table.
Groundwater beneath the site and groundwater in a defined plume surrounding the site have been polluted with constituents which are consistent with the contaminants detected in the soil on-site. The contractor evaluated alternatives for groundwater remediation, but DEP has formed no conclusions as of this time regarding any recommendation for cleaning up polluted groundwater on and surrounding the site.
The compounds which are contaminating the soil on-site constitute pollutants to the waters of the state and, so long as the contamination remains in the soil on-site, the waters of the state will continue to be polluted as the result of the infiltration of rainwater through the soil. The primary contaminants identified on-site have a particular capacity to adhere to particles of soil and thus each time moisture passes through those soil particles a portion of the solvents dissolve in water allowing more contamination to move downward under gravity and mix with the groundwater; this can continue to add pollution to the groundwater for decades so long as soil remains unremediated. CT Page 5539
The discharge of pollution into the waters of the state from the site does not depend exclusively on a rain event, because the soil on-site acts as a sponge and a filter which continually discharges moisture, allowing pollutants to pass to the groundwater every day that contamination by those constituents is in the soil. The levels of contamination on the site are such that it does not require a large volume of water to pass through the soil in order to contaminate the groundwater to unsafe levels.
There is no doubt that the identified waste compounds in the soil at the Albany Turnpike site during the period from September 1986 to November 1994 caused pollution to the waters of the state. There is no doubt that the identified wastes from the Albany Turnpike site during the period from September 1986 to November 1994 caused a discharge to the waters of the state. During the period from September 1986 to November 1994 the soil contamination at the Albany Turnpike site increased the mass of contamination in the groundwater in the area of the site.
The defendant Gianfranco Galluzzo did not have a permit from DEP to initiate, create or maintain any discharge of wastewater or any substance into the waters of the state from the Albany Turnpike site during the period from September 1986 through November 1994 nor did he file any application for such permit. During the period from September 1986 to November 1994 the condition of or maintenance of contaminated soil at the Albany Turnpike site could reasonably be expected to create a source of pollution to the waters of the state because rainwater continually moves through and dissolves some of the solvents adhering to the soil particles on the site and creates a source of pollution to the waters of the state; such a source of pollution will continue if the source is not completely isolated or if the contamination is not removed.
 II.
The following conclusions of law propounded by the court are undisputed:
Spent industrial solvents and sludge constitute "hazardous waste" within the meaning of Conn. Gen. Stat. § 22a-115 (1) and "hazardous substances" within the meaning of Regulations of Conn. State Agencies ("RCSA") § 22a-133f-1(a). CT Page 5540
The defendant Gianfranco Galluzzo had notice prior to his purchase that the Albany Turnpike site was the subject of a DEP pollution abatement order. The defendant is a "responsible party" pursuant to Conn. Gen. Stat. § 22a-133e and § 22a-133f and § 22a-133g by reason of his ownership of the Albany Turnpike site and the issuance of DEP pollution abatement order HM-568.
The Albany Turnpike site is an "establishment" pursuant to Conn. Gen. Stat. § 22a-134 (3) in that its operations recycled, reclaimed, reused, stored, handled, treated or disposed of hazardous waste generated by another person. The defendant Gianfranco Galluzzo failed to comply with the requirements of the Transfer Act, Conn. Gen. Stat. § 22a-134 et seq., in connection with the conveyance of the Albany Turnpike site to his ownership in September 1986. The defendant Gianfranco Galluzzo failed to comply with the requirements of the Transfer Act, Conn. Gen. Stat. § 22a-134 et seq., in connection with the conveyance of the Albany Turnpike site from him to Cadle Properties of Connecticut, Inc. in November 1994.
The defendant Gianfranco Galluzzo, by maintaining the Albany Turnpike site in its contaminated state from September 23, 1986 to November 4, 1994, caused "pollution" to the waters of the state as that term is defined by Conn. Gen. Stat. § 22a-423. The defendant Gianfranco Galluzzo, by maintaining the Albany Turnpike site in its contaminated state from September 23, 1986 to November 4, 1994, caused a "discharge" of "wastes" to the waters of the state as those terms are defined by Conn. Gen. Stat. §22a-423. During the period from September 23, 1986 to November 4, 1994, the defendant Gianfranco Galluzzo has caused pollution to the waters of the state or has maintained a discharge of wastes in violation of Conn. Gen. Stat. § 22a-427. During this period the defendant has initiated, created or maintained a discharge of water, substance or other material into the waters of the state without a permit for such discharge in violation of Conn. Gen. Stat. § 22a-430. During this period the defendant has taken no action to abate the pollution or contamination at the Albany Turnpike site.
 III.
On the basis of the facts found and the law as applied to those facts:
The court concludes that the plaintiff is entitled to have CT Page 5541 the court enter an order requiring the defendant Gianfranco Galluzzo to take whatever steps are necessary to remediate all contaminated soil on the property known as 51 Albany Turnpike, Canton, Connecticut ["the site") and to remediate all waters of the state polluted or contaminated as the result of discharges from the site.
The court concludes that the plaintiff is entitled to have the court enter an order requiring the defendant Gianfranco Galluzzo to pay a civil penalty for violations of the Water Pollution Control Act and the Transfer Act to the Treasurer of the State of Connecticut.
The court further concludes that the plaintiff is entitled to have the court enter an order requiring the defendant Gianfranco Galluzzo to pay environmental remedial costs for all expenses of the Remedial Investigation/Feasibility Study to the Treasurer of the State of Connecticut.
The court further concludes that the plaintiff is entitled to have the court enter an order requiring the defendant Gianfranco Galluzzo to pay environmental remedial costs for all expenses to be incurred in connection with the environmental remediation of contaminated soil on the Albany Turnpike site to the Treasurer of the State of Connecticut.
WHEREUPON, it is ordered, adjudged and decreed as follows:
1. A permanent injunction shall enter requiring the defendant Gianfranco Galluzzo to take all necessary action as required by the Commissioner of Environmental Protection ("commissioner") to remediate soil contamination at the site and to remediate all waters of the state affected by pollution or contamination from the site, including but not limited to the following steps:
A. On or before thirty days after entry of this Judgment, verify in writing to the commissioner of Environmental Protection ("Commissioner") that a qualified environmental consultant acceptable to the Commissioner has been retained to perform the steps required in this Judgment.
B. Take all remedial actions as required by the Commissioner to minimize or eliminate the contamination resulting from past disposal activities at the site. CT Page 5542
C. On or before ninety days after entry of this Judgment, submit to the Commissioner for his review and written approval a detailed remedial action plan and schedule to perform the preferred remedial actions, including, but not limited to, a schedule for applying for and obtaining all permits and approvals required for such remedial actions. At a minimum, such plan(s) shall include any further characterization of the site that may be necessary to define the degree and extent of soil and groundwater which will be required to be remediated, and a soil, surface water and ground water monitoring program to determine the degree to which the approved remedial actions have been effective, and schedule for performing the approved monitoring program.
D. Unless another deadline is specified in writing by the Commissioner on or before ninety days after approval of each plan(s) described in the preceding paragraph, defendant Gianfranco Galluzzo shall submit to the Commissioner for his review and written approval, contract plans and specifications for the approved remedial actions; and shall submit applications for all permits required for such actions. The defendant shall use best efforts to obtain all required permits.
E. Defendant Gianfranco Galluzzo shall perform the approved remedial actions in accordance with the approved schedule(s).
F. Within sixty days of completing the remedial actions, defendant Gianfranco Galluzzo shall certify to the Commissioner in writing that the actions have been completed as approved.
G. Defendant Gianfranco Galluzzo shall perform the approved monitoring program to determine the effectiveness of its remedial actions in accordance with the approved schedule(s). If the approved remedial actions do not result in the prevention and abatement of soil, surface water and ground water pollution to the satisfaction of the Commissioner, additional remedial actions and measures for monitoring and reporting on the effectiveness of those actions shall be performed in accordance with a supplemental plan and schedule approved in writing by the Commissioner. Unless otherwise specified by the Commissioner in writing, the supplemental plan and schedule shall be submitted to the Commissioner for his review and written approval on or before CT Page 5543 sixty days after notice that they are required.
H. On a schedule established by the Commissioner or, if no such schedule is established, on a quarterly basis beginning no later than ninety days after initiation of the approved remedial actions or, as applicable, supplemental remedial actions, defendant Gianfranco Galluzzo shall submit to the Commissioner for his review and written approval a report describing the results to date of the monitoring program to determine the effectiveness of the remedial actions.
I. Defendant Gianfranco Galluzzo shall not be considered in full compliance with this Judgment until all actions required of him by this Judgment have been completed as approved, and to the satisfaction of the Commissioner, and all soil, surface water and ground water pollution addressed in this Judgment from the site and the sources of that pollution, have been abated to the satisfaction of the Commissioner.
2. The defendant Gianfranco Galluzzo is hereby ordered to pay a civil penalty to the State of Connecticut in the amount of $3,993,300 for violations of the Water Pollution Control Act, Conn. Gen. Stat. Chapter 446k, and for violation of the Transfer Act, Conn. Gen. Stat. § 22a-134 et seq.
3. The defendant Gianfranco Galluzzo is hereby ordered to pay environmental remedial costs for the Remedial Investigation/Feasibility Study to the State of Connecticut in the amount of $518,286.56.
4. The defendant Gianfranco Galluzzo is hereby ordered to pay environmental remedial costs for soil remediation to be conducted on the Albany Turnpike site to the State of Connecticut in the amount of $4,500,000.
5. All payments required by this Judgment shall be by certified check or bank check made payable to "Treasurer, State of Connecticut," and delivered to the Office of the Attorney General, 55 Elm Street, P. O. Box 120, Hartford, Connecticut 06141-0120 to the attention of Patricia A. Horgan, Assistant Attorney General or to the attention of the Environment Department.
Hennessey, J. CT Page 5544